ARKANSAS COUNTY, Arkansas *v.* Travis BURRIS, On Behalf of Himself and Other Similarly Situated Citizens and Taxpayers of Arkansas County, Arkansas

91-132 825 S.W.2d 590

Supreme Court of Arkansas
Opinion delivered March 2, 1992

*Robert Dittrich,* for appellant.

*Gibson & Deen,* by: *Thomas D. Deen,* for appellees.

TOM GLAZE, Justice. This case involves the validity of Ordinance 89-262 enacted on March 23, 1989, by the Arkansas County Quorum Court. The ordinance established a waste collection system for the unincorporated areas of the county. After the ordinance's enactment, the appellee challenged the assessment and collection of the waste fee as an illegal exaction. Relying upon the case of *Freeman* v. *Curry,* 299 Ark. 263, 772 S.W.2d 586 (1989), the chancellor agreed the fees were illegal, enjoined collection of the fees and ordered their refund.

The legality of the county's ordinance centers on Section IV of that enactment where the quorum court directed the county judge to present to the county's collector and assessor a list of the names of all residents in the unincorporated areas who had failed to pay the assessed waste fee and penalty. The provision further mandated the assessor to include those fees and penalties on the residents' personal property tax statements as a special charge to be paid upon the payment of their taxes. Under the ordinance, the collector then is mandated to require full payment of the unpaid waste charges and penalties *prior* to accepting the residents'

payment of personal property taxes. The issue in this appeal is whether the Arkansas County Quorum Court was authorized by law to collect a waste fee by imposing it as a surcharge on the personal property taxes the residents of the county must pay. We hold that, at the time the Arkansas County Quorum Court provided for such a collection method, by enacting Ordinance 89-262, it was not authorized to impose the fee and penalty in the manner it did.[1]

First, we agree with the county's argument that the *Freeman* case is not entirely dispositive of the issue we must resolve. There, the Cleveland County Quorum Court established a solid waste disposal authority under Act 699 of 1979, codified in Ark. Code Ann. §§ 14-233-101 to -121 (1987), and Act 742 of 1977, as amended, known as the Arkansas County Government Code and codified in Ark. Code Ann. §§ 14-14-101 to -1313 (1987). We held the county validly created its waste disposal authority under Act 699, but failed to meet the procedural requirements of Act 742, which provided the authority through which the county would impose mandatory fees and collect delinquent charges. *See* Section 106 of Act 742 [§ 14-14-708 to -711 (1987)]. Section 106 of Act 742, particularly § 14-14-708, provides for the establishment of a subordinate service district through which a county can provide a number of different services including solid waste services.[2] Section 106, codified at § 14-14-711(d), specifically empowers a subordinate service district to enter service charges (waste fee charges) on real and personal property taxpayer notices and in turn requires the collector to accept payment of such property taxes only when the service charge has been paid. This same provision further provides that if a property owner fails to pay the service charge, the charge becomes a lien on the owner's property.

We said in *Freeman* that Cleveland County failed to avail itself of the powers granted subordinate service districts under Act 742 because the county did not meet the notice or public

---

[1] The Arkansas General Assembly has since enacted Act 1007 of 1991, which authorizes making the waste fee a lien on the taxpayer's real and personal property.

[2] Section 106 was repealed by Act 919 of 1979, but reenacted by Act 874 of 1981 with some change in its purposes subsection (3).

hearing requirements or allow the taxpayers the opportunity to invoke the special referendum procedures provided under the act. Such requirements, we concluded, were predicate to the city's imposing a lien on a taxpayer's property. 299 Ark. at 265-266, 773 S.W.2d at 588; *see also* Section 106 of Act 742, as amended by Act 874 of 1981, codified in § 14-14-711(d) (1987).

Unlike in *Freeman*, the county here, in enacting Ordinance 89-262, made no mention of Act 742, but instead argues it proceeded under Act 237 of 1971 [Ark. Code Ann. §§ 8-6-201 to -217 (1987)], Act 238 of 1971 [Ark. Code Ann. §§ 14-232-101 to -114 (1987)] and Act 473 of 1977 [Ark. Code Ann. § 14-20-109 (1987)]. These acts preceded Act 742 and, in various ways, authorized counties to establish solid waste disposal facilities and assess fees for the collection of such refuse and waste. *See* in particular §§ 8-6-212, 14-20-109 and 14-232-103 and 232-110. In its enactment of Act 742, the General Assembly never specifically repealed any of these three acts. However, when Arkansas County enacted its ordinance, none of these acts it chose to proceed under expressly authorized a county to use a taxpayer's personal property statement as a means to collect delinquent waste fees. Only Act 742 provided for such a collection measure, and Arkansas County concedes it specifically rejected the idea of proceeding under that act.

In further reading of the three acts the county says it followed, only one, Act 238 (§ 14-232-110), actually authorizes mandatory fees the county requires by Ordinance 89-262, and none of them (unlike Act 742) set out any specific method by which the fees are to be collected. At best, Act 238 (§ 14-232-103(b)) empowers a county to prescribe, by order or ordinance, reasonable rules and regulations necessary or appropriate, to collect and dispose of refuse. Otherwise, the three acts merely provide a county can fix reasonable (or appropriate) fees for the collection of such refuse.

■ Although Arkansas County contends the general or non-specific langauge contained in the acts it proceeded under is sufficient to support the use of the personal property tax laws to collect waste fee assessments, this court has held that a quorum court has no legislative powers other than those expressly directed or permitted. *Walker* v. *Washington*, 263 Ark. 317, 564 S.W.2d

513 (1978). Clearly, Arkansas County points to no authority, and we know of none, that expressly directs or permits it to enforce payment of waste fees by preventing taxpayers from paying their personal property taxes without first showing a receipt that they had paid their waste fee charge.

The county cites the case of *Geurin* v. *City of Little Rock*, 203 Ark. 103, 155 S.W.2d 719 (1941), which illustrates the foregoing point well. There, the City of Little Rock passed an ordinance that provided for the collection of city waste, fixed a schedule for the service and set a penalty in the nature of a fine for violating the ordinance. This court upheld the penalty aspect of the Little Rock ordinance stating the General Assembly, in enacting Section 9589, Pope's Digest [now codified in Ark. Code Ann. § 14-54-103 (1987)], granted to the cities the power to prevent anything dangerous within their corporate limits. In fact, § 14-55-601 (1989) (formerly Section 9544, Pope's Digest), specifically authorizes cities to impose fines, forfeitures and penalties to enforce ordinances enacted for such purposes. Of course, if Arkansas County had provided in its ordinance for fines as a means to enforce its collection of waste, such a method of enforcement, having been authorized by the General Assembly, would have been valid. Instead, the county chose to enforce its waste service fees through use of tax liens and in depriving taxpayers of their motor vehicle licenses, which have been enforcement measures reserved for the state for other purposes. Again, the General Assembly simply has not provided counties with these measures or authority.

Recently, the General Assembly amended Act 237 (§ 8-6-211 and 212) by enacting Act 1007 of 1991, which expressly provides county government, particularly county collectors, with the authority to use tax records and real and personal property lien laws to enforce collection of unpaid waste fees. Act 1007's enactment supports the appellee's argument that, if Arkansas County and other such government entities had already had the powers expressly given them by this new act, then the General Assembly's action would appear superfluous. Nonetheless, until Act 1007, the county had no express statutory authority to provide by ordinance for the collection procedures it did by enforcing waste fee payments by patching into existing statutory penalty provisions the state employs when collecting personal

property taxes. For example, under Ordinance 89-262, taxpayers failing to pay their waste fee charges cannot pay their personal property tax, and as a consequence, their property is subject to seizure and sale plus penalties, Ark. Code Ann. § 26-36-206 (1987), they cannot obtain their motor vehicle licenses, Ark. Code Ann. § 27-14-1015 (Supp. 1991), and they are prevented from paying their general real estate taxes, Ark. Code Ann. § 26-35-601 (1987). If counties are to acquire the use and benefit of these coercive statutory provisions, the General Assembly is the body that must give them such authority. Because Arkansas County had no authority in 1989 to enact Section IV of Ordinance 89-262, we affirm the trial court's order enjoining the county from collecting the fees and penalties under the ordinance.

■ Finally, Arkansas County argues that, even if the waste fees constituted illegal exactions, the trial court erred in ordering refunds to all the taxpayers. It contends that refunds should be given only those taxpayers who can establish their payment of the residential waste collection fee was made as a prerequisite to payment of personal property taxes. In sum, the county argues the ordinance contains a severability clause, and the fee assessment portion of the ordinance should survive, leaving the question which taxpayers are entitled to refunds. Appellee points out that the county never presented this argument below, and our search of the record confirms appellee's assertion. If such an issue were involved, the county had the duty of pointing it out to the trial court, with appropriate proof, and that court should have been given an opportunity to rule on the issue. *B & P, Inc.* v. *Norment*, 241 Ark. 1092, 411 S.W.2d 506 (1967); *Mid-South Ins. Co.* v. *First National Bank of Fort Smith*, 241 Ark. 935, 410 S.W.2d 873 (1967).

For the above reasons, we affirm the trial court's decision.

HAYS, J., dissents.

STEELE HAYES, Justice, dissenting. Each county in Arkansas is required by law to provide a method of waste collection to handle solid waste within and near its boundaries. For many years Arkansas County complied with this mandate by placing dumpsters at various points throughout the county for its rural residents. This method of collection was funded entirely by federal revenue sharing funds and was provided at no expense to

the citizens of Arkansas County. In 1988 federal funds were no longer available so the county contracted with a private individual to provide a voluntary waste collection systems for its rural residents. However, in February of 1989 the private contractor notified the county that because of operating losses he was discontinuing the collection service. Thus, Ordinance 89-262 was enacted at a time when Arkansas County was faced with the mandatory obligation to provide solid waste collection, had no funds available for that purpose and knew from recent experience that a voluntary service was not feasible.

The majority contends the ordinance is invalid because the Arkansas County Quorum Court has no power to impose the fee and penalty in the manner it did. Yet, the majority cites no authority for that holding, merely concluding that "if counties are to acquire the use and benefit of these coercive statutory provisions, the General Assembly is the body that must give them such authority." To the contrary, it is clear that Arkansas County was entitled to enact Ordinance 89-262 under the police power of the municipality.[1] Without the benefit of such power no municipality could adequately safeguard the health, safety, or general welfare of its citizens.

I believe the decision in *Geurin* v. *City of Little Rock*, 203 Ark. 103, 155, S.W.2d 719 (1941) is controlling. In *Geurin* the City of Little Rock passed an ordinance for the collection of waste within the city which fixed a schedule of fees for the service and provided a penalty for violating the ordinance. Geurin was convicted in municipal court for violation of the ordinance. On appeal he challenged the city's power to enact such an ordinance and contended the ordinance was void because it levied an illegal tax and made failure to pay the tax a criminal offense. This court held that the city's police power to protect the health of its citizens authorized the procedure chosen. Arkansas Code Ann. § 14-54-103 (1987); *see also* Ark. Code Ann. § 14-55-102 (1987). The court explained the derivation and importance of a municipality's police power:

---

[1] "We have many times announced the rule that: counties, cities and towns, . . . are municipal corporations [.]" *City of Hot Springs* v. *Gray*, 215 Ark. 243, 219 S.W.2d 930 (1949).

It is said in 11 Amer. Juris., § 245: "The police power is an attribute of sovereignty and a necessary attribute to every civilized government. It is a general term used to express the particular right of a government which is inherent in every sovereignty. Consequently, it is inherent in the states of the American union, possessed by every one of them as sovereign, and is not a grant derived from or under any written Constitution. In connection with this latter principle, the point of view has been expressed that the police power is a grant from the people to their governmental agents. It has also been affirmed, however, in discussing the source of the power, that the right of the Legislature to exercise the police power is not only not referable to any single provision of the Constitution, but inheres in, and springs from, the nature of our institutions; and so the limitations upon it are those which spring from the same source, as well as those expressly set out in the Constitution. It is very generally regarded not as a delegated, but a reserved, power.

"The police power is as old as the civilized governments which exercise it. The states existed before the Constitution of the United States, and they possessed the police power before the adoption of that organic document. Moreover, it has been held many times that the Constitution supposes the pre-existence of the police power, and must be construed with reference to that fact. . . . Moreover, it has been said that the very existence of government depends on it as well as the security of the social order, the life and health of the citizen, the enjoyment of private and social life, and the beneficial use of property."

One of the most important fields of legislation that may be enacted under the police power is that of regulations in the interest of public health. If a city could not enact laws of this sort to protect the health of its citizens, any kind of disease might be permitted to spread among the inhabitants, resulting in great damage. It would be useless to undertake to review, or even collect, the many authorities on this subject; but it is generally held that measures of this nature may be enacted.

*Id.* at 108, 155 S.W.2d at 721.

Courts have held that the power to protect the health of the citizens of a municipality is broader than other powers. Charles S. Rhyne, *The Law of Local Government Operations* § 19.68 (1980). Furthermore a municipality's exercise of police power is free from any liability for compensation for private losses resulting from it. 6A Eugene McQuillan, *The Law of Municipal Corporations* § 24.06 (3rd ed. 1988). This is so because their injury or damage is treated "as *damnum absque injuria* or, in other words, as being compensated by their sharing in the general benefits therefrom." Rhyne, *supra,* § 19.19. Arkansas has embraced this tenet. *Springfield* v. *City of Little Rock,* 226 Ark. 462, 290 S.W.2d 620 (1956) (stating that violation of police power duties subjects municipalities only to political consequences and not civil liability).

The duty to exercise police power where there is a public need for it is within the sound discretion of municipal authorities and the courts will not interfere except for abuse of discretion. *Id.* The Arkansas County Quorum Court properly exercised its police power in addressing a condition which plainly jeopardized the health of its citizens. Therefore, I am of the opinion the ordinance is valid and the chancellor erred in enjoining the collection of fees for the waste collection system and in ordering their refund.