IN RE ADOPTION OF K.F.H. and K.F.H.

92-183 844 S.W.2d 343

Supreme Court of Arkansas
Substituted opinion delivered February 8, 1993*

---

*Original opinion delivered January 11, 1993.

*MacDonald & Goren*, by: *Lisa J. Vogler*; and *Snellgrove, Laser, Langley & Lovett*, by: *Todd Williams*, for appellant.

*Kathleen C. Boyle*, and *Friday, Eldredge & Clark*, by: *Robert S. Shafer*, for appellee.

ROBERT L. BROWN, Justice. This case involves the adoption of two children, K.F.H. and K.F.H., without the consent of their natural mother the appellant. The probate judge granted the adoption and terminated the parental rights of the appellant. The appellant raises three points on appeal. The points raised are without merit, and we affirm the judgment of the probate judge.

There are two appellees, the natural father and his wife, the adoptive mother. The natural father, who lives in Jonesboro, hired a Michigan lawyer to locate a surrogate mother to bear him a child. He was then put in contact with the appellant. On February 17, 1986, the appellant contracted with the natural father to be artificially inseminated with his sperm and to bear him a child whom he and his wife would subsequently adopt. In June of 1986, the appellant became pregnant but miscarried. Afterwards, she was artificially inseminated numerous times in December 1986 and January 1987 with the appellee's sperm and became pregnant again in January of 1987, this time with twins.

During the pregnancy, the appellant decided that she wanted to keep the children she was carrying and filed a complaint in Michigan on August 19, 1989, to void the surrogate parenting contract as contrary to public policy. The appellees then filed a complaint, also in Michigan, asserting that one of the appellees was the natural father of the children and praying for their adoption by the other appellee in accordance with the agreement. Twins, K.F.H. and K.F.H., were born to the appellant on September 4, 1987, in Michigan.

On April 21, 1988, an order was entered by the Michigan circuit court voiding the surrogate parenting contract on public policy grounds. A second order was entered, also on April 21, 1988, stating that the natural father would have legal and physical custody of the twins, that the appellant would be permitted visitation, that the appellant must pay $28.00 per week for child support which the court abated in light of her anticipated visitation expenses, and that the appellees must send the appellant periodic reports on the children.

The appellant moved from Michigan to Ohio sometime in April of 1990. On September 18, 1990, jurisdiction of this matter was transferred from the Michigan circuit court to the Craighead County Chancery Court. On November 1, 1990, the appellees filed a petition in the Craighead County Probate Court for the wife of the natural father to adopt the twins. In that petition, they contended that one of the appellees was the biological father and that the appellant's consent was not required because she had failed, without justifiable cause, to communicate with the children for at least a year. On July 19, 1991, the probate judge granted the petition for adoption and found that the appellant's consent was not required due to failure to communicate with her children as alleged. He further found that it was in the children's best interest that the natural father's wife adopt them.

## I. CHOICE OF LAW

Under Arkansas law, parental consent is not required of the non-custodial parent if that parent fails significantly and without justifiable cause to communicate with the child for a period of at least one year. Ark. Code Ann. § 9-9-207(a)(2) (1987).

The appellant first contends that because this case originated in Michigan that state's laws applied up to the point when jurisdiction of the case was transferred to Arkansas on September 18, 1990. Michigan statutory law provided at the time that the consent of a non-custodial parent could be waived if the non-custodial parent had failed or neglected to provide regular and substantial support for a period of two years, or had the ability to but failed to regularly or substantially communicate with the child for a period of two years. According to the appellant, Arkansas's one-year requirement could only apply for the period accruing after the case was transferred to this state on

September 18, 1990.

■ The focal point for this issue is the date when the adoption petition was filed — November 1, 1990. By that date, the Craighead County Probate Court clearly had jurisdiction of the cause. We have held that the one-year period after which a parent may lose the right to consent must accrue before filing the adoption petition and that the filing of the petition is the cutoff date. *Dixon* v. *Dixon*, 286 Ark. 128, 689 S.W.2d 556 (1985). We have further held that the one-year requirement applies to any one-year period between the date of birth and date the petition for adoption was filed and is not limited to the year immediately preceding the filing of the adoption petition. *Pender* v. *McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979). And we have applied the one-year period against a nonresident parent who failed to support his child significantly for a year and thereby lost the right to consent. *Henson* v. *Money*, 273 Ark. 203, 617 S.W.2d 367 (1981).

■ Here, we are presented with a novel circumstance in that jurisdiction of the case was transferred to Arkansas shortly before the adoption petition was filed. The probate judge, however, was presented with no clear and cogent reason not to apply Arkansas law to this cause other than the fact that the case had only been in Arkansas for a month and a half. It is elementary that the laws of the forum state typically are applied to its cases and controversies. We hold that there was no error in the application of Arkansas law to circumstances occurring prior to the transfer of jurisdiction.

■ The appellant contends for the first time on appeal that her due process rights were violated because of lack of notice that she stood to lose her parental rights by the retrospective application of Arkansas law to a time when the Michigan circuit court still had jurisdiction. It does not appear, though, that the appellant raised this constitutional argument before the probate judge. Merely arguing that Arkansas law should not apply until after the court obtained jurisdiction, as the appellant did before the probate judge, did not alert the judge to the constitutional arguments now presented. This court will not consider any argument raised for the first time on appeal, even a constitutional argument. *Arkansas County* v. *Burris*, 308 Ark. 490, 825 S.W.2d

590 (1992).

## II. WAIVER OF CONSENT

For her second point, the appellant urges that she did not fail to communicate with her children for a year, and even if this court concludes that she did, this lapse was justifiable under § 9-9-207(a)(2).

 Statutes for the adoption of children are strictly construed and applied. *Swaffar* v. *Swaffar,* 309 Ark. 73, 827 S.W.2d 140 (1992). We have placed a heavy burden of proof on one wishing to adopt a child without the consent of a parent and that burden is by clear and convincing evidence. *In the Matter of the Adoption of Glover*, 288 Ark. 59, 702 S.W.2d 12 (1986); *Harper* v. *Caskin*, 265 Ark. 558, 580 S.W.2d 176 (1979). The question we must now answer on appeal is whether the probate judge's finding of lack of parental contact without justification was clearly erroneous. *See Anderson* v. *Douglas*, 310 Ark. 633, 839 S.W.2d 196 (1992).

 The record reveals that the appellant's last visit with her children was on March 20, 1989, and no contact was had with them until she mailed birthday cards on September 27, 1990. That represents a period of a year and one-half when there was no communication between the appellant and the twins. The appellant insists that a letter she wrote dated March 8, 1990, to Ms. Evelyn Green, the appointed friend of the Michigan court, requesting visitation of the children, and a progress report sent from the appellees to her concerning the children made in April 1990 qualify as communication with the children. The argument though is specious. Communication with Ms. Green or the appellees did not constitute communication with the children. The fact of the matter is there was no contact with the children for more than a year.

 We are left then with the pivotal question of whether the failure to communicate was without justifiable cause under the statute. We do not believe that the probate judge clearly erred in finding no justification. Failure to communicate without justifiable cause means a failure that is voluntary, willful, arbitrary, and without adequate excuse. *Bemis* v. *Hare*, 19 Ark. App. 198, 718 S.W.2d 481 (1986); *Roberts* v. *Swim*, 268 Ark.

917, 597 S.W.2d 840 (Ark. App. 1980).

The appellant presents several reasons why her lack of communication with the twins was justified. She points to her relationship with the appellees, which, she stated, had been adversarial since the birth of the twins, and to the age of the twins, which made it impossible for her to communicate with them without the cooperation of the appellees. She also states that she sent letters and cards to the twins which they never received. And, she maintains that she tried to arrange for a visit with the children in March of 1990. Lastly, she claims that financial problems and her pregnancy prevented her from traveling.

In his findings, the probate judge highlighted the frustration that Evelyn Green had in maintaining contact with the appellant and in arranging her visits with the children:

> Ms. Green continued trying to arrange visits for respondent (appellant) and was unable to make any arrangements. In fact, during part of this time respondent refused to give her her home address and when she finally met with Ms. Green she informed her she was pregnant.
> . . .
> It must be noted that during all of the time Ms. Green was seeking to arrange visitation with these children, the appellees cooperated fully and completely in order to facilitate respondent's court ordered visitation with the children. It appears to this Court that Ms. Green complied fully and completely with the Michigan Court Orders and did everything within her power to help respondent in arranging these periods of visitation with the children. It appears that she was frustrated in her attempts to carry out the Orders of the Court due to respondent's actions and not due to any reluctance on the part of petitioners (the appellees) to assist with the visitation or any refusal on the part of Ms. Green to comply with the Orders of the Court. Respondent testified that she was unable to exercise some visitation periods scheduled by Ms. Green due to lack of finances required for travel. She also admitted, however, that during the period of time from the entry of the Order in 1988 until her last visitation with these children in March, 1989, she had engaged in relationships with at

least two men, one relationship resulting in the birth of three children and her later marriage to that man just prior to the hearing in this case. At one point she candidly admitted that she did not furnish Ms. Green her address because the man she was living with did not want his address given to third parties. During the time in question respondent made no effort to communicate with these children in any manner other than the visitations which have already been discussed.

The record supports the probate judge's findings. In addition, though the appellant argues on appeal that she sent cards and presents to the children during the relevant eighteen-month period, this is not reflected in the record. What the record does reflect is that during this time period the appellant had a job, received money from a student grant and loan to attend college, and was paid for an article on surrogate motherhood. She also made several trips out of state, including a trip to Florida in May 1990 with her other children.

We view the issue of justifiable cause as factual but one that largely is determined on the basis of the credibility of the witnesses. This court gives great weight to a trial judge's personal observations when the welfare of young children is involved. *In re Adoption of Perkins/Pollnow*, 300 Ark. 390, 779 S.W.2d 531 (1989); *see also In the Matter of the Adoption of J.L.T.*, 31 Ark. App. 85, 788 S.W.2d 494 (1990). The probate judge found that proof of the appellant's disregard of the children for more than a year was clear and convincing. We cannot say that the evidence is to the contrary.

## III. RELEVANCY OF WITNESSES

For her last point, the appellant argues that it was error to admit the testimony of Evelyn Green and Mr. Emmett Presley, a teacher at Arkansas State University in the field of social work who was asked to oversee the appellant's visits with the twins in Jonesboro. Ms. Green testified to communication problems with the appellant, her indecisiveness, and her move from Michigan to Ohio without notice. Mr. Presley testified that a male friend accompanied the appellant on one visitation. According to the appellant, both witnesses' testimony was prejudicial and irrelevant.

We disagree. First, their testimony was especially relevant to the question of arranging the appellant's visits with the twins and to how the visits actually transpired since both people were directly involved in that process. A trial court's ruling on the relevancy of evidence will not be reversed absent an abuse of discretion. *Farmers Bank v. Perry*, 301 Ark. 547, 787 S.W.2d 645 (1990). Here, we discern no such abuse.

Secondly, we note that while the probate judge conceded that all of the Green/Presley testimony might not be relevant, he added that he could separate any chaff from the wheat. Even if some chaff was admitted into evidence, we have held that in a bench trial the trial judge is capable of evaluating the evidence, and the judgment will stand unless all of the competent evidence is insufficient to support the judgment or the incompetent evidence induced as essential finding that would not otherwise have been made. *See Rich Mountain Elec. Coop. v. Revels*, 311 Ark. 1, 841 S.W.2d 151 (1992); *Butler v. Dowdy*, 304 Ark. 481, 803 S.W.2d 534 (1991). We hold that neither circumstance exists in this case.

Affirmed.