946 S.W.2d 946 (1997)
329 Ark. 163
In the Matter of the ADOPTION OF Kristen Dyan LYBRAND.
John Wesley KING, Appellant,
v.
Sharon LYBRAND, Appellee.
No. 97-94.
Supreme Court of Arkansas.
June 23, 1997.
*947 Sam Heuer, Little Rock, for Appellant.
NEWBERN, Justice.
This is an adoption case in which the natural father of the adopted child challenges the adoption on the ground that he received no notice and did not give his consent. He further contends the adoption was not in the best interest of the child. We affirm the decision.
*948 The appellant, John Wesley King, and a woman whose name is now Sharon Lybrand married in 1976. They divorced and then remarried. After the divorce and prior to their remarriage in 1984, Kristen Dyan Lybrand was born to Ms. Lybrand. Mr. King and Ms. Lybrand thereafter divorced again, and the decree did not mention Kristen. Ms. Lybrand married Joseph Lybrand in 1986. In 1987, Ms. Lybrand sued Mr. King alleging that he was the father of Kristen and seeking child support. Mr. King denied paternity, and apparently the action was dropped by Ms. Lybrand.
In March 1995, Mr. King filed a "visitation motion" in Pulaski County where he resides, asserting that he is the father of Kristen. In May 1995, Mr. Lybrand petitioned the Grant Probate Court to adopt Kristen. On June 13, 1995, Mr. King's Pulaski County action was dismissed, as venue was improperly laid. It was refiled as a paternity action by Mr. King in Grant County on June 16, 1995. Ms. Lybrand answered and denied Mr. King's allegation that he was Kristen's father.
On August 22, 1995, a final adoption order was entered in favor of Mr. Lybrand. On August 31, 1995, Ms. Lybrand moved to dismiss Mr. King's paternity suit, attaching to her motion the final adoption decree making Kristen the daughter of Mr. Lybrand.
Mr. King moved to set aside the adoption decree and to "reopen" the adoption proceeding. He claimed he was entitled to have notice of the adoption proceeding but had not received notice. The motion to set the adoption aside was granted, and the proceeding was thus reopened. Prior to the ensuing hearing, Ms. Lybrand filed a further response to Mr. King's paternity action, and she admitted that Mr. King was Kristen's father.
At the ultimate hearing, there was testimony about acrimony between Ms. Lybrand and Mr. King. The evidence showed that, although Ms. Lybrand allowed the child to spend considerable time with Mr. King's mother, she attempted to keep Mr. King from seeing the child. Mr. King asserted that he had indeed seen Kristen despite the attempts to keep her away from him and that he had supported her to some extent by reimbursing his mother for gifts and expenditures she had made for Kristen.
The Lybrands contended Mr. King was not entitled to notice of the adoption proceeding because he had not registered as a putative father pursuant to Ark.Code Ann. § 20-18-702 (Repl.1991) and because he had abandoned or deserted Kristen. The Trial Court's order dismissed Mr. King's paternity petition and granted Mr. Lybrand's adoption petition. Mr. King has raised four points of appeal.

1. Jurisdiction
Mr. King contends that he was not given notice of the initiation of the adoption petition by Mr. Lybrand. He contends the failure to give him notice was fatal to the Trial Court's "jurisdiction" because of the lack of strict compliance with the adoption statutes requiring such notice. Although he does not say so directly, Mr. King's suggestion seems to be that the Court in that circumstance lacks jurisdiction of the subject matter. That is not so. The cases Mr. King cites have to do with jurisdiction of the person.
In Hughes v. Cain, 210 Ark. 476, 196 S.W.2d 758 (1946), the natural parent of an adopted child petitioned for habeas corpus contending that the adoption was invalid because the natural parents had not been given notice. The writ was granted, and we affirmed. Our holding was that the adoption was void because the nonresident parents of the child had not been given notice by publication as required by statute. We held, "it was necessary that service be obtained by publication as provided in § 256 of Pope's Digest, ... before the probate court could acquire jurisdiction of the person of the appellee." Hughes v. Cain, 210 Ark. at 482, 196 S.W.2d at 760 (emphasis added).
In Pender v. McKee, 266 Ark. 18, 582 S.W.2d 929 (1979), we held that lack of notice was not sufficient to void an adoption where the complaining natural parent had entered an appearance in the proceeding. In Schrum v. Bolding, 260 Ark. 114, 539 S.W.2d 415 (1976), the natural parent of the child sought to be adopted was a minor. We *949 voided the adoption because she had not received service of process. The opposing argument was that she had entered her appearance in the adoption proceeding. We rejected that argument on the ground that, as a minor, she was unable to enter an appearance except through a guardian, and that had not occurred.
The last case cited by Mr. King on the jurisdiction point is Olney v. Gordon, 240 Ark. 807, 402 S.W.2d 651 (1966), in which we held a foreign adoption decree entered without notice to the natural parent or evidence of his entry of appearance was void and thus not entitled to full faith and credit. Again, the issue was not jurisdiction of the subject matter.
Mr. King did clearly appear in the adoption proceeding. Instead of asking that it be dismissed for lack of notice to him, he asked that the adoption be set aside and the proceeding reopened. The request was honored, and we have no hesitation in concluding the Trial Court had personal jurisdiction of Mr. King.

2. Putative Father Registry Act
One of the Lybrands' contentions before the Trial Court with respect to the notice issue was that, as Mr. King had not registered his paternity claim pursuant to the Putative Father Registry Act, Ark.Code Ann. §§ 20-18-701 through XX-XX-XXX (Repl. 1991 and Supp.1995), he was not entitled to notice. On appeal, Mr. King argues, as he did before the Trial Court, that the Act is unconstitutional. We decline to address the argument, as the abstract of the record does not demonstrate that any ruling was made on the point. Morrison v. Jennings, 328 Ark. 278, 943 S.W.2d 559 (1997); Vanderpool v. Fidelity & Casualty Ins. Co., 327 Ark. 407, 939 S.W.2d 280 (1997); Haase v. Starnes, 323 Ark. 263, 915 S.W.2d 675 (1996).

3. Consent
Mr. King contends his consent to the adoption was necessary and was obviously not given. Ark.Code Ann. § 9-9-207 (Repl.1993) provides:
(a) Consent to adoption is not required of:
(1) A parent who has deserted a child without affording means of identification or who has abandoned a child;
(2) A parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.
* * *
"Abandonment" is defined in Ark.Code Ann. § 9-9-202(7)(Repl.1993) as:
... the failure of the parent to provide reasonable support and to maintain regular contact with the child through statement or contact, when the failure is accompanied by an intention on the part of the parent to permit the condition to continue for an indefinite period in the future, and failure to support or maintain regular contact with the child without just cause for a period of one (1) year shall constitute a rebuttable presumption of abandonment.
This definition is relevant to § 207(a)(1), as that provision excuses the necessity of consent from a parent who has "abandoned" a child and was cited by the Trial Court as a ground for granting the adoption despite the lack of consent from Mr. King.
The "abandonment" definition overlaps a bit with the language in § 207(a)(2). Under both provisions, the question is whether the periods of non-communication or non-support resulted "without just cause" or was "justifiable." The justification proffered by Mr. King is that Ms. Lybrand was the sole reason he was unable to see his daughter.
Adoption statutes are strictly construed, and a person who wishes to adopt a child without the consent of the parent must prove that consent is unnecessary by clear and convincing evidence. In re Adoption of K.F.H. and K.F.H., 311 Ark. 416, 844 S.W.2d 343 (1993); Harper v. Caskin, 265 Ark. 558, 561, 580 S.W.2d 176, 179 (1979)(stating adoption petitioner's burden is "heavy"). A finding that consent is unnecessary on account of *950 a failure to support or communicate with the child is, however, not reversed unless clearly erroneous. K.F.H, supra. "We view the issue of justifiable cause as factual but one that largely is determined on the basis of the credibility of the witnesses. This court gives great weight to a trial judge's personal observations when the welfare of young children is involved." K.F.H., 311 Ark. at 423, 844 S.W.2d at 347.
In analyzing these consent statutes, some additional principles are relevant. A "failure to communicate without justifiable cause" is one that is "voluntary, willful, arbitrary, and without adequate excuse." K.F.H., 311 Ark. at 421, 844 S.W.2d at 346. The one-year period, moreover, may be any one-year period, not merely the one-year period preceding the filing of the adoption petition. Pender v. McKee, 266 Ark. 18, 582 S.W.2d 929 (1979). It is not required that a parent fail "totally" in these obligations in order to fail "significantly" within the meaning of the statutes. Pender v. McKee, 266 Ark. at 28, 582 S.W.2d at 934. The duty to support is not excused on the basis of other people's conduct unless such conduct prevents the performance of the duty of support. Pender v. McKee, 266 Ark. at 31, 582 S.W.2d at 935.
Mr. King's justification argument must be considered in light of his denial of paternity when support for Kristen was sought by Ms. Lybrand in 1987 and his failure to assert his paternity until 1995. Although Mr. King and his mother testified that he supported Kristen somewhat through his mother and that he sneaked visits with Kristen when she was visiting with his mother, there is no "paper record" of support whatever. Given the deference we accord to the Trial Court's determination of the credibility of the witnesses, we cannot say it was clearly erroneous to hold Mr. King's consent was not required.

4. Best interest
In this fourth point, the question is whether the judge was correct to conclude that the adoption was in Kristen's best interest. We will not reverse a probate court's decision regarding the best interest of a child to be adopted unless it is clearly against the preponderance of the evidence, giving due regard to the opportunity and superior position of the trial court to judge the credibility of the witnesses. In the Matter of the Adoption of Perkins/Pollnow, 300 Ark. 390, 779 S.W.2d 531 (1989); Dixon v. Dixon, 286 Ark. 128, 689 S.W.2d 556 (1985).
The evidence presented with respect to Mr. Lybrand's relationship with Kristen was all positive. His marriage to Ms. Lybrand is apparently stable, and he has worked for the same employer for sixteen years and is apparently able to continue supporting his family. There was some evidence that in the past Mr. Lybrand had a drinking problem and exhibited some tendency toward violence, but there was also evidence that he had quit drinking. On the whole, we cannot say that the Trial Court erred in granting Mr. Lybrand's petition.
Affirmed.