SLIP OPINION

Cite as 2017 Ark. 182

# SUPREME COURT OF ARKANSAS

No. CV-16-926

|  |  |  |
|---|---|---|
| REANNA RODGERS | APPELLANT | **Opinion Delivered:** May 18, 2017<br><br>APPEAL FROM THE GARLAND COUNTY CIRCUIT COURT [NO. PR-2014-531-IV] |
| V. |  | HONORABLE MARCIA R. HEARNSBERGER, JUDGE |
| DESTINY RODGERS | APPELLEE | <u>AFFIRMED; COURT OF APPEALS' OPINION VACATED</u>. |

**RHONDA K. WOOD, Associate Justice**

Reanna Rodgers appeals from a final decree granting an adoption petition filed by her ex-husband's current spouse, Destiny Rodgers. The circuit court granted Destiny's request to adopt Reanna's four minor children, KR, JR, TR, and AR. On appeal, Reanna argues that the circuit court erred by finding that her consent was not necessary because she had failed, for a period of at least one year and without justifiable cause, to communicate with her children or to provide for their care and support as required by law or court order. We affirm the order of adoption.[1]

---

[1] We accepted this case on a petition for review of a decision by the court of appeals, which affirmed the circuit court's order of adoption. Thus, our jurisdiction lies pursuant to Rule 1-2(e) of the Arkansas Supreme Court and Court of Appeals.

SLIP OPINION

Chris Rodgers and Reanna Rodgers were married in 2002 and divorced in 2011. The divorce decree gave them joint custody of their four children. In May 2013, Chris married Destiny Rodgers. On September 6, 2013, the circuit court, following a hearing, entered a temporary custody order that awarded Chris sole custody of the children because Reanna had tested positive for amphetamine and methamphetamine. The court explained that the test showed she had used within 72 hours. It further suspended Reanna's visitation with the children. At the hearing, the circuit court stated, "So when I say that she is not to have any visitation at all with these children, I mean she is not to have any visitation at all with these children," and warned Chris that if he permitted any visitation between Reanna and the children that it would hold Chris in contempt of court. The circuit court also told Reanna,

> [A]nd when you decide that your children are more important to you than methamphetamine, then you can certainly come back and you can ask the Court to reverse this ruling and the Court will certainly look at it. But until that happens then there's not going to be even visitation with your children.

The circuit court's order stated "[t]hat the Plaintiff may petition this court for a review of the issue of child custody, or child visitation, at such time as the Plaintiff can pass a drug screen." In addition, the court's order specifically required her to submit to a hair-follicle test. The circuit court's order also stated that "no child support shall be ordered from the Plaintiff at this time."

Reanna filed two separate drug-test results with the circuit court in October 2013 and April 2014 showing that she was negative for methamphetamine and other controlled substances. She did not file a petition for visitation following the clean drug screens. She

later admitted that she relapsed after the October drug screen, but she claimed that she has been drug free since approximately December 2013.

On September 19, 2014, Destiny, with Chris's consent, petitioned the circuit court to adopt the children. Destiny alleged that Reanna's consent was not required because Reanna, for a period of more than one year, had without justifiable cause failed to provide for the care and support of the children in a significant or meaningful fashion and because Reanna had failed to communicate with or maintain any significant contact with them. Reanna challenged the adoptions and filed a petition for visitation in the divorce action on October 19, 2014.

At the hearing on the adoption petition, Reanna testified that she had not had visitation with her children since August 2013. She admitted that she continued to use drugs until December of 2013. In October 2014 she married Michael Eller with whom she has a five-month-old son. She conceded that she had not communicated with or provided support for the children between September 2013 and September 2014. She stated she attempted to pay child support in December 2014, after the petition for adoption had been filed. She believed that her failures were justified because the court had suspended her visitation and had not ordered her to pay any child support. She also stated that she did not file a negative hair follicle test until March 10, 2015, six months after the petition for adoption. After the hearing, the circuit court granted the petition for adoption, concluding that Reanna's consent was not required pursuant to Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 2015) because she failed significantly and without justifiable cause for at

least one year to communicate with her children or to provide for their care and support.

It stated,

> The failure of the children's mother with regards to communication or support were demonstrated to be meaningful, intentional and without justifiable cause. The Respondent's actions during the year following her loss of child custody demonstrated her lack of regard for her children's well-being and instead demonstrated her desire to move on with other interests she obviously found to be more compelling.

Arkansas Code Annotated section 9-9-207(a)(2) provides that consent to an adoption is not required of "a parent of a child in the custody of another, if the parent for a period of at least (1) year has failed significantly and without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree."   As we have previously held, "failed significantly" does not mean "failed totally." *Racine v. Nelson*, 2011 Ark. 50, 378 S.W.3d 93.  Rather, it means a failure that is meaningful or important.  *Id*.  "Without justifiable cause" denotes a failure that is voluntary, willful, arbitrary, and without adequate excuse.  *In re Adoption of K.F.H. & K.F.H.*, 311 Ark. 416, 423, 844 S.W.2d 343, 347 (1993).

We review probate proceedings de novo and will not reverse the decision of the circuit court unless it is clearly erroneous.  *Martini v. Price*, 2016 Ark. 472, 507 S.W.3d 486. A finding is clearly erroneous when, despite evidence to support it, we are left with the firm conviction that a mistake has been made.  *Id*.  When reviewing probate proceedings, we defer to the superior position of the circuit court  to determine the credibility of the witnesses.  *Id*.  "We view the issue of justifiable cause as factual but one that largely is determined on the basis of the credibility of the witnesses. This court gives great weight to

a circuit court's personal observations when the welfare of young children is involved." *In re Adoption of K.F.H. & K.F.H.*, 311 Ark. at 423, 844 S.W.2d at 347.

The circuit court's findings were not clearly erroneous. Reanna does not dispute that she failed to significantly communicate with or provide support for her children for over a year. Rather, she claims that the court erred in concluding that she did not have justifiable cause for not contacting her children because at the September 2013 custody hearing the circuit court instructed that she was to have no visitation with the children. We disagree.

This court is unwilling to hold that when a parent cannot have visitation with her children, due to a court order, that gives the parent justifiable cause to make no effort in continuing a relationship with the children. The statute reads it's a parent's failure to "communicate with the child," not a failure to have visitation with the child that allows adoption to proceed without consent. Ark. Code Ann. § 9-9-207(a)(2). Despite having her visitation suspended, Reanna could have communicated with the children other ways. *See, e.g., Gordon v. Draper*, 2013 Ark. App. 352, 428 S.W.3d 543 (imprisonment is no justification for failure to communicate with child) (citing *Zgleszewski v. Zgleszewski*, 260 Ark. 629, 542 S.W.2d 765 (1976)). She could have made telephone calls to the children, sent birthday or Christmas cards, letters, or emails, but she attempted to do none of these. She also did not attend any school, church, or sporting events involving her children. She failed to show an interest in their lives despite living approximately 150 feet from the children. Furthermore, once she was drug free, she failed to petition the court for a review of the temporary order that suspended the visitation until October 19, 2014, which was

thirty days after the petition for adoption had been filed and more than one year after her first clean drug screen.[2] While she claims she was unable to afford an attorney, she admitted that she was capable of working but did not work, and while she relied on her husband's income, she did not ask him or her parents for money to hire an attorney or file the petition. She gives no justifiable cause for failing to have any contact with her children, despite the father having sole custody. The court found that from September 6, 2013 until May 20, 2015, the date of the adoption hearing, Reanna had failed to make even one effort to contact her children. The circuit court did not error in finding that Reanna placed other interests in priority over communicating with her children.

This case is distinguishable from our recent decision in another stepparent adoption case. *See Martini*, 2016 Ark. 472, 507 S.W.3d 486. In *Martini*, we held that there was insufficient evidence to establish that the child's father had failed without justifiable cause to communicate with his child for a period of one year. The father was subject to two no-contact orders that barred him from contact with the child's mother, and he had no other means to contact the child except through the mother. The mother had moved to another state and not informed the father of the child's residence. We concluded that it was

---

[2] While the dissent claims Reanna could not have petitioned for visitation until she could pass a clean drug screen, the record reflects that the court was using a drug screen that exposes drug use within the last 72 hours. Therefore, if Reanna cared about her children and had stopped using drugs once she lost custody, she could have passed a clean drug screen within days and petitioned the court in September 2013. She failed to do so. However, this argument misses the point. It was not Reanna's failure to be drug free and petition the court for visitation that caused her to lose her children. Regardless of Reanna's substance-abuse problems, suspension of visitation with one's children is not justifiable cause for complete failure to maintain a meaningful and significant relationship with the children through other means.

reasonable for the father to be concerned that contact aimed at the young child could constitute a violation of the no-contact order that would expose him to incarceration. Here, the court only terminated Reanna's visitation but did not issue a no-contact order, nor did it order her to refrain from communicating with her children or even their father. Nevertheless, she did not attempt any form of communication with the children, who lived down the road from her. More importantly, the circuit court had explicitly told Reanna that she could petition the court to review the suspension of visitation as soon as she could pass a drug screen. Thus, Reanna alone controlled when her visitation would be reinstated. Reanna alone controlled whether she communicated with her children through cards, letters, and phone calls. However, she did not avail herself of these opportunities to maintain contact with her children. Reanna does not contest that she significantly failed to communicate with her children for more than a year.

The circuit court concluded that Reanna's "actions during the year following her loss of child custody demonstrated her lack of regard for her children's well-being and instead demonstrated her desire to move on with other interests she obviously found to be more compelling." We cannot say that this finding, which was based on the credibility of the witness testimony, including the testimony of Reanna, Chris, and two of the children, was clearly erroneous. Reanna's sole argument, that the court's order prohibiting her from exercising visitation was justifiable cause to have no communication at all with her children is unavailing. We agree that Reanna significantly and unjustifiably failed to communicate with the children for at least one year. Thus, we affirm the circuit court's conclusion that her consent to the adoption was not required.

Affirmed; court of appeals' opinion vacated.

KEMP, C.J., and WYNNE, J., concur.

BAKER, HART, AND WOMACK, JJ., dissent.

**ROBIN F. WYNNE, Justice, concurring.** I cannot agree with the majority that Reanna's failure to communicate with the children in the face of an order that would have punished her with contempt for having visitation with the children justifies a finding that her consent to a stepparent adoption is not required on that basis. Here, the trial court was quite emphatic that allowing visitation while the order was in place would be dealt with harshly. The majority concludes that a ban on visitation did not preclude Reanna from having contact with the children in other ways. As persons trained in the law, we know this. It is apparent from the record that Reanna did not. In fact, there is some indication in the record that both Reanna *and* Chris thought that the trial court's order meant that she could not have contact with the children while the order remained in effect. I do not believe that stripping a parent of her right to consent to the adoption of her children is warranted essentially because she does not understand the legal distinction between visitation and contact. Therefore, I would not affirm the trial court's decision on the same basis as the majority.

However, in addition to alleging that Reanna had failed to maintain contact with the children, Destiny Rodgers alleged in the adoption petition that Reanna had failed to provide care and support for the children. Consent to adoption is not required of a parent of a child in the custody of another, if the parent for a period of at least one year has failed significantly without justifiable cause to provide for the care and support of the child as

required by law or judicial decree. Ark. Code Ann. § 9-9-207(a)(2)(ii) (Repl. 2015). It is undisputed that Reanna provided no support for the children for at least one year prior to the filing of the adoption petition. Reanna admitted before the circuit court that she understood that she had a duty to support the children. Nonetheless, Reanna contends that her failure to provide support is justified by the fact that the trial court's order did not require her to pay child support. However, in *Fonken v. Fonken*, 334 Ark. 637, 976 S.W.2d 952 (1998), this court held that a parent has a legal and moral duty to support a minor child, regardless of the existence of an order of support. Here, despite her legal and moral duty to provide for her children, Reanna abdicated that responsibility to Chris and Destiny, taking no action whatsoever to provide for the children in any way until the adoption petition was filed. Under these circumstances, I do not believe that the circuit court erred in finding that Reanna's failure to provide support was without justifiable cause.

For these reasons, I concur.

KEMP, C.J., joins.

**KAREN R. BAKER, Justice, dissenting.** I must respectfully dissent from the majority's decision because the circuit court clearly erred in granting Destiny's petition for stepparent adoption. Specifically, the circuit court clearly erred in finding that Reanna's consent was not required for Destiny to adopt the children.

At issue here are two separate orders in two separate proceedings—an order issued in a divorce proceeding and an order issued in an adoption proceeding. The order in the divorce proceeding presumably remains in place. It is troubling that the circuit court, in an adoption proceeding, could revisit an order entered in a separate divorce proceeding and

SLIP OPINION

conclude that the order was meaningless. On the question of the requirement of parental

consent to the adoption, Arkansas Code Annotated section 9-9-207(a)(2) provides in

pertinent part that

> [c]onsent to adoption is not required of . . . [a] parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii) to provide for the care and support of the child as required by law or judicial decree[.]

The one-year period after which a parent may lose the right to consent must accrue before

the filing of the adoption petition, and the filing of the petition is the cutoff date. *In re*

*Adoption of K.F.H.*, 311 Ark. 416, 420, 844 S.W.2d 343, 345 (1993) (citing *Dixon v. Dixon*,

286 Ark. 128, 689 S.W.2d 556 (1985)).

During the September 4, 2013 hearing in the divorce proceeding, the circuit court

admonished both Chris and Reanna, stating that Reanna "is not to have any visitation at all

with these children." The September 6, 2013 amended temporary order eliminated

Reanna's visitation rights because she tested positive for methamphetamine. The order

specifically stated that Reanna "should not be entitled to any visitation at this time." The

order also stated that she could petition for child custody or child visitation after she passed

a drug screen. Further, the order specifically stated that "no child support shall be ordered

from Reanna at this time." During the May 20, 2015 hearing on the adoption petition,

Reanna testified that she interpreted the amended temporary order to mean that she was to

have no contact with the children. Likewise, Chris testified that he interpreted the amended

temporary order to mean that Reanna could have no contact with the children.

Based on Reanna's reliance on the circuit court's admonitions and the amended

temporary order in the divorce proceeding, Reanna's failure to communicate with her

children and her failure to pay child support was not without justifiable cause. This case is even more compelling than our recent case, *Martini v. Price*, 2016 Ark. 472, 507 S.W.3d 486, where this court set aside a stepparent adoption. There, the "no contact" order was directed toward the father's contact with the mother. Here, the order restricted Reanna's visitation with the children. Further, the order specifically stated that Reanna was not required to pay child support, so there was a "judicial decree" setting out her responsibilities regarding support of the children. *Martini* supports the setting aside of the stepparent adoption.

Furthermore, prior to the filing of Reanna's negative drug screen, her compliance with the circuit court's admonishments and amended temporary order was required. Despite the majority's holding to the contrary, the one-year period did not begin until October 17, 2013, when Reanna's negative drug screen was filed in the circuit court. Accordingly, when Destiny filed her petition for stepparent adoption on September 19, 2014, the one-year period had not accrued. Thus, the period of time between the September 6, 2013 amended temporary order and the October 17, 2013 filing of the negative drug screen should be excluded from the calculation of the one-year period. As noted above, the one-year period must accrue before the filing of the adoption petition. *In re Adoption of K.F.H.*, *supra*. Here, Destiny filed her adoption petition 28 days prior to the accrual of the mandatory one-year period. Because Destiny filed the adoption petition prematurely, she failed to prove by clear and convincing evidence that Reanna's consent to adoption was unnecessary. *See In re Adoption of Lybrand*, 329 Ark. 163, 946 S.W.2d 946 (1997).

Accordingly, I would reverse and dismiss the circuit court's order finding that Reanna's consent to the adoption was not required and granting Destiny's petition for adoption.

HART, J. joins in this dissent.

**SHAWN A. WOMACK, JUSTICE, dissenting.** I respectfully dissent because I would hold that Reanna Rodgers's lack of communication with her children had not been unjustified for the full year required by statute prior to the filing of the adoption petition. I believe that this conclusion is required if we are to remain consistent with our recent holding in *Martini v. Price*, 2016 Ark. 472, 507 S.W.3d 486, in which the court interpreted the same statutory language from Arkansas Code Annotated section 9-9-207. While I believe that the outcome of the case in circuit court and the majority opinion here are likely in the best interest of the minor children, and I do not condone the behavior of Reanna Rodgers, I disagree with the holding of the majority simply as a function of the calendar. Therefore, because I believe the statutory requirements were not met, I would hold that the circuit court clearly erred in granting the petition for adoption without Reanna's consent.

On September 6, 2013, the circuit court entered its temporary order awarding custody of the children to Chris Rodgers and prohibiting visitation by Reanna. As the majority notes, the order invited Reanna to petition the court to reconsider the custody and visitation determinations once she had passed a drug screen. The court specified that this should be a hair-follicle test. Reanna filed a urine test negative for amphetamines with the court on October 17, 2013, but she did not petition at that time for reconsideration of the court's order. Destiny Rodgers filed her adoption petition with the circuit court on

September 19, 2014, one year and thirteen days after the initial order. We have held that the one-year period of unjustified noncommunication (or any other failure eliminating the parental-consent requirement for adoption) "must accrue before filing the adoption petition and that the filing of the petition is the cutoff date." *In re Adoption of K.F.H.*, 311 Ark. 416, 420, 844 S.W.2d 343, 345 (1993) (citing *Dixon v. Dixon*, 286 Ark. 128, 689 S.W.2d 556 (1985)). To reach the majority's conclusion, one would have to conclude that the temporary order suspending visitation justified Reanna's noncommunication for at most thirteen days. If her failure to communicate was justified for any longer period, then her deficiency would not have lasted for a year prior to the petition.

The majority does not delve into this timing issue because it holds that Reanna's noncommunication was justified for zero days. The majority holds that Reanna's belief that the visitation prohibition also prohibited contact through other channels was immediately and entirely unjustified. In contrast, I believe that our holding in *Martini* necessitates a conclusion that the court order justified Reanna's noncommunication for at least some period of time. I am not persuaded by the majority's attempt to distinguish the cases. While it is of course true that the facts differ, it is not clear to me that even those distinctions highlighted by the majority cut against Reanna's argument for justification here. In *Martini*, the court order prevented contact specifically with the mother of the children, not the children themselves. *Martini*, 2016 Ark. 472, at 5, 507 S.W.3d at 489. Martini was, in fact, provided with an e-mail address *specifically to contact his children*, but opted to discontinue that contact out of fear that it was an attempt to trick him into violating the no-contact order with the mother. *Id*. As the dissent points out, the majority accepted this and other tenuous

SLIP OPINION

assertions by Martini out of what could only have been a very forgiving interpretation of justification for the purposes of safeguarding parental rights against involuntary adoption. *See id*. at 7–13, 507 S.W.3d at 491–93 (Goodson, J., dissenting). I believe Reanna's belief here that the no-visitation order prevented her from communicating with her children for at least thirteen days is at least as justified as the circumstances we held in *Martini* to justify a substantial failure to communicate for several years. In fact, the majority here quotes the circuit judge as saying during the hearing, "So when I say that she is not to have any visitation at all with these children, I mean she is not to have any visitation at all with these children." It is not unreasonable that this statement by the judge would be interpreted by Reanna to mean not only in-person visitation, but also telephonic or other electronic visitation as well.

Because I would not hold, as the majority does, that Reanna's incorrect understanding of the visitation order was completely unjustified under our generous standard from *Martini*, I would look instead to when her noncommunication became unjustified. I believe the most logical date for that tipping point is her submission of a first clean drug test on October 17, 2013. After she submitted a clean drug test, her justified— though misplaced—trepidation about violating a court order became unjustified when she failed to take the court up on its offer and petition it to change its order. It is true that the urine test submitted on this date was not the hair-follicle test requested by the court, but diligent action by Reanna at this juncture would have clarified the court's requirements for her, resulted in the submission of a conforming test, and rendered unjustified any further

apprehension that she could not communicate with her children.[3] Because October 17, 2013, is less than a year before Destiny Rodgers filed the petition for adoption, I believe it was clear error for the circuit court to grant the petition without Reanna's consent.

I respectfully dissent.

*Taylor & Taylor Law Firm, P.A.*, by: *Andrew M. Taylor* and *Tasha C. Taylor*, for appellant.

*Steve Westerfield*, for appellee.

---

[3] Before dismissing the relevancy of Reanna's drug-test results entirely in its second footnote, the majority muses in the alternative that the order provided a justifiable obstacle to communication for three days at most. It arrives at this figure because three days was the period within which the failed test leading to Reanna's loss of custody and visitation detected her drug use. I fail to see the relevance of that window, however, since it only states the period in which the test *did* detect drug use instead of the period for which the test *could* detect drug use. As a matter of practice, the circuit court likely specified the use of a hair-follicle test because such tests can detect substantially older drug use than alternatives like urine or blood analysis. The overriding impression from the circuit court's comments was its desire to be certain that Reanna had abandoned methamphetamine use before considering reinstating visitation.