Shawn A. Womack, Justice, dissenting. I respectfully dissent because I would hold that Reanna Rodgers’s lack of communication with her children had not been unjustified for the full year required by statute prior to the filing of the adoption petition. I believe that this conclusion is required if we are to remain consistent with our recent holding in Martini v. Price, 2016 Ark. 472, 507 S.W.3d 486, in which the court interpreted the same statutory language from Arkansas Code Annotated section 9-9-207. While I believe that the outcome of the case in circuit court and the majority opinion here are likely in the best interest of the minor children, and I do not condone the behavior of Reanna Rodgers, I disagree with the holding of the majority simply as a function of the calendar. Therefore, because I believe the statutory requirements were not met, I would hold that the circuit court clearly erred in granting the petition for adoption without Reanna’s consent. On September 6, 2013, the circuit court entered its temporary order awarding custody of the children to Chris Rodgers and prohibiting visitation by Reanna. As the majority notes, the order invited Reanna to petition the court to reconsider the custody and visitation determinations once she had passed a drug screen. The court specified that this should be a hair-follicle test. Reanna filed a urine test negative for amphetamines with the court on October 17, 2013, but she did not petition at that time for reconsideration of the court’s order. Destiny Rodgers filed her adoption petition with the circuit court on September 11S19, 2014, one year and thirteen days after the initial order. We have held that the one-year period of unjustified noncom-munication (or any other failure eliminating the parental-consent requirement for adoption) “must accrue before filing the adoption petition and that the filing of the petition is the cutoff date.” In re Adoption of K.F.H., 311 Ark. 416, 420, 844 S.W.2d 343, 345 (1993) (citing Dixon v. Dixon, 286 Ark. 128, 689 S.W.2d 556 (1985)). To reach the majority’s conclusion, one would have to conclude that the temporary order suspending visitation justified Reanna’s non-communication for at most thirteen days. If her failure to communicate was justified for any longer period, then her deficiency would not have lasted for a year prior to the petition. The majority does not delve into this timing issue because it holds that Reanna’s noncommunication was justified for zero days. The majority holds that Reanna’s belief that the visitation prohibition also prohibited contact through other channels was immediately and entirely unjustified. In contrast, I believe that our holding in Martini necessitates a conclusion that the court order justified Reanna’s noncommu-nication for at least some period of time. I am not persuaded by the majority’s attempt to distinguish the cases. While it is of course true that the facts differ, it is not clear to me that even those distinctions highlighted by the majority cut against Reanna’s argument for justification here. In Martini, the court order prevented contact specifically with the mother of the children, not the children themselves. Martini, 2016 Ark. 472, at 5, 507 S.W.3d at 489. Martini was, in fact, provided with an e-mail address specifically to contact his children, but opted to discontinue that contact out of fear that it was an attempt to trick him into violating the no-contact order with the mother. Id. As the dissent points out, the majority accepted this and other tenuous | uassertions by Martini out of what could only have been a very forgiving interpretation of justification for the purposes of safeguarding parental rights against involuntary adoption. See id. at 7-13, 507 S.W.3d at 491-93 (Goodson, J., dissenting). I believe Reanna’s belief here that the no-visitation order prevented her from communicating with her children for at least thirteen days is at least as justified as the circumstances we held in Martini to justify a substantial failure to communicate for several years. In fact, the majority here quotes the circuit judge as saying during the hearing, “So when I say that she is not to have any visitation at all with these children, I mean she is not to have any visitation at all with these children.” It is not unreasonable that this statement by the judge would be interpreted by Reanna to mean not only in-person visitation, but also telephonic or other electronic visitation as well. Because I would not hold, as the majority does, that Reanna’s incorrect understanding of the visitation order was completely unjustified under our generous standard from Martini, I would look instead to when her noncommunication became unjustified. I believe the most logical date for that tipping point is her submission of a first clean drug test on October 17, 2013. After she submitted a clean drug test, her justified—though misplaced— trepidation about violating a court order became unjustified when she failed to take the court up on its offer and petition it to change its order. It is true that the urine test submitted on this date was not the hair-follicle test requested by the court, but diligent action by Reanna at this juncture would have clarified the court’s requirements for her, resulted in the submission of a conforming test, and rendered unjustified any further | ^apprehension that she could not communicate with her children.[3] Because October 17, 2013, is less than a year before Destiny Rodgers filed the petition for adoption, I believe it was clear error for the circuit court to grant the petition without Reanna’s consent. I respectfully dissent. . Before dismissing the relevancy of Reanna's drug-test results entirely in its second footnote, the majority muses in the alternative that the order provided a justifiable obstacle to communication for three days at most. It arrives at this figure because three days was the period within which the failed test leading to Reanna’s loss of custody and visitation detected her drug use. I fail to see the relevance of that window, however, since it only states the period in which the test did detect drug use instead of the period for which the test could detect drug use. As a matter of practice, the circuit court likely specified the use of a hair-follicle test because such tests can detect substantially older drug use than alternatives like urine or blood analysis. The overriding impression from the circuit court’s comments was its desire to be certain that Reanna had abandoned methamphetamine use before considering reinstating visitation.