William R. VIER *v.* Tammy VIER (Hart) and David P. Hart

CA 97-534 968 S.W.2d 657

Court of Appeals of Arkansas
Division I
Opinion delivered May 13, 1998

*Josh E. McHughes*, for appellant.

*Kenneth G. Fuchs*, for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant William R. Vier and appellee Tammy Vier (now Hart) were married on December 23, 1983. Although they separated in October 1991, their child, Jessica Vier, was born on March 20, 1992. The parties divorced on March 31, 1992, and the divorce decree provided that Mrs. Hart was to have custody of the child. Mr. Vier was given liberal visitation, but limited to the presence of either Mrs. Hart or Mr. Vier's parents. Mr. Vier visited with Jessica on several occasions, but it is undisputed that his last visit occurred on February 13, 1993.

On July 18, 1994, Mrs. Hart and her current husband, David P. Hart, filed a petition for adoption in the Faulkner County Probate Court. In the petition, it was alleged that Jessica had had no contact with her natural father for more than one year, and that

she had been reared by the petitioners since the time of her birth. Mr. Vier contested the adoption, contending that he had failed to visit Jessica only because the appellees had prohibited him from doing so. In addition, Mr. Vier filed a motion for visitation on November 29, 1994, in which he requested that the chancery court enter an order establishing his entitlement to specific visitation with the child. After hearings were conducted before the chancery and probate courts on these pleadings, the probate court granted the appellee's petition for adoption, finding that Mr. Vier failed without justifiable cause to have any meaningful contact with Jessica since February 1993, and that adoption by Mr. Hart was in the child's best interest. Mr. Vier now appeals this ruling, arguing that the probate court erred in finding that he failed to maintain meaningful contact with Jessica and that such failure was without justifiable cause. We affirm.

Mrs. Hart testified at the hearings and expressed her desire that Mr. Hart adopt Jessica. Mrs. Hart indicated that Mr. Vier moved to Louisiana after they separated and that she has continued to reside in Mayflower, Arkansas, with Mr. Hart, Jessica, and a child that was born of her current marriage. According to Mrs. Hart, Mr. Vier visited Jessica fairly regularly until February 13, 1993. Then, in March 1993, when he came to Mayflower for visitation, he was arrested for failing to pay child support. Mr. Vier did not see Jessica on that occasion, and had not returned to Mayflower prior to the institution of these proceedings. Mrs. Hart acknowledged that, since the March 1993 incident, Mr. Vier has stayed current on his child-support obligation. However, she asserted that his parental rights should be terminated because "he [Mr. Hart] is the only father she [Jessica] has known." With regard to Mr. Vier's efforts to visit with Jessica, Mrs. Hart testified that, "I have done nothing to prevent Bill Vier from visiting or seeing his child." Mrs. Hart stated that she is a veterinarian and her husband is the Mayflower Chief of Police, and asserted that they are financially able to support both of her children.

Mr. Hart testified that he frequently spends time with Jessica and wants to adopt her because he has raised her since she was seven months old. He further testified that he has never discouraged visitation between Jessica and Mr. Vier.

Mr. Vier testified that he has remarried, and that for the past three years he has lived with his wife in Ventress, Louisiana. He acknowledged that he has not seen Jessica since February 1993, but indicated that he had repeatedly tried to do so, but his efforts were thwarted by Mrs. Hart. Mr. Vier testified that he did not know Mrs. Hart's home phone number because it was unlisted, but that he attempted to contact her on a monthly basis at her veterinary clinic. Mr. Vier insisted that on each occasion he would leave a message asking Mrs. Hart to return his call and set up a time for visitation, but that Mrs. Hart never returned any of his calls. In her testimony, Mrs. Hart acknowledged that phone records revealed that Mr. Vier called the clinic for one minute each in March, September, October, November, and December 1993, and also in January 1994. However, she testified that she rarely answers the telephone at the clinic, and that she never instructed anyone to hang up on him or be uncooperative. Indeed, two of her employees, who were responsible for answering the telephone, could not recall receiving any calls from Mr. Vier. Mrs. Hart asserted that she never received any messages or had any other contact with Mr. Vier during this time frame, and surmised that Mr. Vier must have been calling and hanging up.

Mr. Vier also testified that, in the spring of 1994, he sent Mrs. Hart a letter and asked her to call him, but that she failed to do so. However, Mrs. Hart denied receiving such a letter. Mr. Vier acknowledged that, despite his repeated failed efforts to set up visitation with Jessica, he never had Mrs. Hart cited for contempt, nor did he take any other legal action until after he was served with the petition for adoption. However, he explained that although he had planned to take legal action earlier he did not have enough money to hire a lawyer.

For reversal in this case, Mr. Vier asserts that the probate court erred in ordering Jessica's adoption. Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 1993) provides:

(a) Consent to adoption is not required of:

(2) A parent of a child in the custody of another, if the parent for a period of at least one (1) year has failed significantly without justifiable cause (i) to communicate with the child or (ii)

> to provide for the care and support of the child as required by law or judicial decree[.]

Mr. Vier does not dispute that he failed to communicate with Jessica for more than one year. However, he notes that "failed significantly" means a failure that is "meaningful or important," *see Taylor v. Hill*, 10 Ark. App. 45, 661 S.W.2d 412 (1983), and submits that his failure to communicate was not significant because any communication would not have been meaningful to the young child because of her age and the fact that the only father figure that she knew was Mr. Hart. Mr. Vier further argues that the probate court erred in finding that his failure to visit was without justifiable cause, and notes that parental rights should not be terminated unless the lack of visitation was willful in the sense of being voluntary and intentional. *See Taylor v. Hill, supra.* Mr. Vier contends that he justifiably failed to visit Jessica because he repeatedly attempted to contact Mrs. Hart but was unable to do so, and because he was afraid to enter Faulkner County for fear of getting arrested. He points out that, in the past few years, he had twice been arrested in Faulkner County for allegedly writing hot checks, and his wife had been arrested once. The last time Mr. Vier presented for visitation in March 1993, he drove a long distance, was arrested, and was never able to see the child.

 We have held that the party seeking to adopt a child without the consent of the natural parent bears the heavy burden of proving by clear and convincing evidence that the party failed significantly and without justifiable cause to communicate with the child. *Taylor v. Hill, supra.* We review probate proceedings de novo, and the decision of the probate court will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. *Dale v. Franklin*, 22 Ark. App. 98, 733 S.W.2d 747 (1987). We have stated that the personal observations of the trial judge are entitled to even more weight in cases involving the welfare of a small child. *In the Matter of Adoption of Titsworth*, 11 Ark. App. 197, 669 S.W.2d 8 (1984). In the instant case, giving due regard to the trial court's assessment of the credibility of the witnesses, we find its decision that the appellees met their burden by clear and convincing evidence was not clearly erroneous.

From March 1993 until appellees filed their petition for adoption on July 18, 1994, there was evidence that Mr. Vier placed six one-minute telephone calls to Mrs. Hart's veterinary clinic. There was also some evidence that he attempted to write her a letter in the spring of 1994, but the trial judge was entitled to believe Mrs. Hart's statement that the letter was never received. Other than these efforts, Mr. Vier made no attempt to contact or visit his daughter. It is undisputed that he did not return to Faulkner County until after the adoption action was brought in July 1994. Mrs. Hart and Mr. Hart both testified that they did not prevent Mr. Vier from visiting the child. On these facts, we cannot find error with the probate judge's finding that Mr. Vier unjustifiably failed to maintain contact with Jessica. It is significant that Mr. Vier never attempted to effect his visitation through legal intervention, and he never apprised the trial court of any alleged interference with his visitation rights until nineteen months after his last visit with Jessica. It has been held that, for purposes of determining whether a parent willfully deserted his child or intended to maintain his or her parental role, the trial court may consider as a factor the parent's failure to seek enforcement of his or her visitation rights during the relevant one-year period. *See Mead v. Roberts*, 702 P.2d 1134 (Or. App. 1985). As for Mr. Vier's contention that his parental rights were not waived because any visitation would not have been meaningful due to his anonymity and the child's young age, suffice it to say that the pertinent statute did not contemplate such an exception and this argument is unsupported by any authority or convincing argument. *See Rogers v. Rogers*, 46 Ark. App. 136, 877 S.W.2d 936 (1994).

Affirmed.

BIRD and ROAF, JJ., agree.