Heather SHORTER *v.* Jerry REEVES and Judy Reeves

CA 99-1270 32 S.W.3d 758

Court of Appeals of Arkansas
Divisions III, IV, and I
Opinion delivered December 6, 2000

*Noel F. Bryant, P.A.*, for appellant.

*Ball, Barton & Hoffman*, by: *David D. Hoffman*, for appellees.

ANDREE LAYTON ROAF, Judge. Heather Shorter appeals from a probate court order granting appellees Jerry and Judy Reeveses' petition to adopt her seven-year-old daughter, A.R. The Reeveses are the child's paternal grandparents. On appeal, Shorter argues that the trial court erred in 1) finding that she had, for a period of at least one year, failed significantly and without justifiable cause to communicate with the child; 2) finding that she had, for a period of at least one year, failed significantly and without justifiable cause to provide for the care and support of the child; 3) applying the law to factual matters occurring after the filing of the adoption petition; and 4) finding that the adoption was in the best interest of the child.

A.R. was born February 19, 1992, and the Reeveses' son, James, is her natural father. Both Shorter and James Reeves were in the Air Force at the time of A.R.'s birth. At the time of the hearing on this case in March 1999, Shorter had been married three times, although not to Mr. Reeves, and had three children. She had given one child up for adoption, a child born in September of 1995 lived with her second ex-husband, and A.R. had lived with the Reeveses for the past three years. Shorter had been on active duty in the Army since October 1996.

Shorter first turned custody of A.R. over to the Reeveses after she married, left the Air Force and moved to Ohio in 1993, because she was in an abusive environment. A.R. stayed with the Reeveses for one month and was returned to Shorter. In 1994, Shorter and A.R. moved to Colorado. In October 1994, Shorter asked the Reeveses to come pick up A.R. because A.R. was having difficulty adjusting to the move and was being abusive to her younger sister. Shorter maintained biweekly contact with A.R. and sent Christmas and birthday gifts during this period.

In June 1995, the Reeveses returned A.R. to Shorter until A.R. was again returned to them in October of 1995. From October 1995 to June 1997, Shorter maintained phone contact with A.R. ranging from biweekly to monthly. Shorter also sent Christmas and birthday gifts during this period.

Shorter enlisted in the Army in April 1996 after her divorce in December 1995 and several months of part-time jobs. In 1996, Shorter stopped in Pine Bluff, but was not allowed to see A.R. Shorter was in basic training from October 1996 through December 1996. Thereafter, she continued advanced training until April 1997. During this time, Shorter offered to enroll A.R. in medical insurance, but the Reeveses told her that the coverage was not necessary.

Other than phone calls, Shorter's contact with A.R. was infrequent. In April 1997, Shorter spent three or four days with A.R. and thereafter continued the biweekly to monthly phone calls until December 1997. At that time, Shorter had custody of A.R. for two weeks until the end of December 1997. The Reeveses filed a Petition for Adoption on January 21, 1998. Shorter continued her biweekly or monthly calls, saw A.R. for two to three hours in

March 1998, and had custody of A.R. for one week in August 1998.

On March 2, 1999, the trial of this matter was held. On March 25, 1999, the trial court found that A.R.'s father waived his parental rights by affidavit, that A.R.'s appearance should be waived because she had lived in the Reeveses' home more than three years, and was seven years old and enrolled in the first grade. The court also found that A.R. did not have to consent to the adoption because she was under ten years old. Additionally, the court found that Shorter's consent was not required because she had failed to significantly communicate with and provide care and support for A.R. for at least one year. Finally, the trial court found that it was in A.R.'s best interest to allow the Reeveses to adopt her and that Shorter's parental rights should be terminated. Shorter appeals from this decision.

 A party seeking to adopt a child without the consent of the natural parent must prove by clear and convincing evidence that the parent failed significantly and without justifiable cause to communicate with the child. *Vier v. Vier*, 62 Ark. App. 89, 968 S.W.2d 657 (1998). We review probate proceedings *de novo*, and the decision of the probate court will not be disturbed unless clearly erroneous, giving due regard to the opportunity and superior position of the trial judge to determine the credibility of the witnesses. *Dale v. Franklin*, 22 Ark. App. 98, 733 S.W.2d 747 (1987).

██ ██ Shorter first argues that the trial court clearly erred when it found that she failed to maintain contact for the statutorily required one-year term sufficient to overcome the argument that she consent to A.R.'s adoption. A person who wishes to adopt a child without the consent of the parent must prove by clear and convincing evidence that the consent is unnecessary. *King v. Lybrand*, 329 Ark. 163, 946 S.W.2d 946 (1997). A finding that consent is unnecessary on account of a failure to support or communicate with the child is, however, not reversed unless clearly erroneous. *Id.* "We view the issue of justifiable cause as factual but one that largely is determined on the basis of the credibility of the witnesses. This court gives great weight to a trial judge's personal observations when the welfare of young children is involved." *In re Adoption of K.F.H. and K.F.H.*, 311 Ark. 416, 844 S.W.2d 343 (1993).

■ The one-year period may be any one-year period, and need not immediately precede the filing of the adoption petition. *Pender v. McKee*, 266 Ark. 18, 582 S.W.2d 929 (1979). It is not required that a parent fail "totally" in these obligations in order to fail "significantly" within the meaning of the statutes. *Pender v. McKee, supra.* A "failure to communicate without justifiable cause" is one that is "voluntary, willful, arbitrary, and without adequate excuse." *K.F.H, supra.* It has been held that, for purposes of determining whether a parent willfully deserted his child or intended to maintain his or her parental role, the trial court may consider as a factor the parent's failure to seek enforcement of his or her visitation rights during the relevant one-year period. *Vier, supra; see also Mead v. Roberts,* 702 P.2d 1134 (Or. App. 1985).

In *Vier, supra,* this court found that the trial court did not err in ordering an adoption when the appellant could not dispute the fact that he failed to communicate with his daughter for more than one year. In that case, Vier acknowledged that he had not seen his daughter for more than one year. He also admitted that he did not attempt to have the appellee cited for contempt for denying him access to his daughter, or take other action to see his daughter. Also, the only evidence of contact was six attempted phone calls and one attempted letter. The court found that it was significant that Vier never attempted to effect his visitation through legal intervention, and never apprised the trial court of any alleged interference with his visitation rights until nineteen months after his last visit with his daughter.

In the instant case, the facts are closely analogous. Here, Shorter only communicated with A.R. via telephone on a biweekly or monthly basis for a one year period. The court found it significant that Shorter chose to stay with her ex-husband and attempt to resolve that abusive relationship; that Shorter chose to stay in Colorado, where she had no significant family ties or friends, rather than come and live with A.R.; that Shorter chose to visit other family members rather than to visit with A.R.; and that on numerous occasions when Shorter could have chosen between her work, her new husband or A.R., she always chose the former over A.R. Finally, the court found that Shorter made no attempt to utilize court remedies, as in *Vier,* whenever she felt she was denied visitation.

■ The court determined that the infrequent phone calls could not constitute significant communication as contemplated by statutory and case law. The final basis for the trial court's ruling was that Shorter was stationed only five hours away, yet she made no attempt to visit A.R. during the one-year period at issue. Based upon these factual determinations, we cannot say that the trial court's decision that Shorter's consent to the adoption was not required was clearly against the preponderance of the evidence.

■ Shorter also argues that the trial court erred when it mentioned her post-petition conduct as a ground for granting the adoption. Shorter contends that when the trial court ruled from the bench, it committed reversible error by referring to conduct after the petition was filed. She contends that such conduct fell outside the required statutory period. Shorter did not raise this argument to the trial court. Moreover, the adoption order states that Shorter's consent was not required because she failed to communicate with A.R. for one year and was based upon the infrequent telephone communications that Shorter had with A.R. during the relevant period. While it is true that our supreme court has held that the one-year period after which a parent may lose the right to consent must accrue before filing the adoption petition and that the filing of the petition is the cutoff date, *K.F.H., supra*; *Dixon v. Dixon,* 286 Ark. 128, 689 S.W.2d 556 (1985), our supreme court has also ruled that it will not consider any argument raised for the first time on appeal. *Id.*

Shorter also argues that the trial court erred when it found that the adoption was in A.R.'s best interest. In this regard, Shorter argues the court erred by not ordering that an investigation be made by the Department of Human Services or any other licensed agency or person designated by the court, as required by Ark. Code Ann. § 9-9-212(b) (Repl. 1998). However, the investigation may be waived pursuant to the following provision:

*Hearing on petition — Requirements.*

(c) Unless directed by the court, an investigation and report is not required in cases in which the person to be adopted is an adult. The court may also waive the requirement for an investigation report when . . . the petitioner and the minor are related to each other in the second degree.

Ark. Code Ann. § 9-9-212(b) (Repl. 1998).

 Although the trial court did not expressly waive the investigation pursuant to this provision, the trial court indicated that it found that it was in A.R.'s best interest to grant the adoption focusing on the stability A.R. has with the Reeveses. A.R. attends church regularly, is doing well in school and has found many friendships with children her age. More importantly, the Reeveses are A.R.'s grandparents and she has been in their custody for the majority of the past three years. As such, we cannot say that the trial court erred when it found that it was in her best interest to remain with them. Affirmed.

PITTMAN, CRABTREE, GRIFFEN and STROUD, JJ., agree.

HART, MEADS, JENNINGS, and NEAL, JJ., dissent.

MARGARET MEADS, Judge, dissenting. I agree with my colleagues and the trial court that the consent of Heather Shorter to her daughter's adoption is not required. I do not agree, however, that adoption is in A.R.'s best interests, and I would reverse.

It is clear to me from the testimony of both Heather Shorter and Jerry Reeves that A.R. has a genuine, loving relationship with her mother. Despite the instability in Heather's personal life, she tried to protect A.R. by removing her from a stressful home life and asking for the Reeveses' help. Heather testified:

> I was grateful to Mr. and Mrs. Reeves for caring for my daughter. I appreciate it so much, because Jerry and Judy really mean a lot to me. They're really good friends. And the fact they would go out of their way to help me care for my daughter tells me a lot about them. They are great people, and they love my daughter dearly, and so do I.

Heather also described the two-week Christmas visit with A.R., stating:

> [W]hen I was not working we would go to the park to play ball. We would go to movies and shopping. She related to me just fine. We had no problems.... She would come up to me, give me hugs, and tell me that she loves me and give me kisses.

Finally, Jerry Reeves testified, "A.R. cares about her mama. She sees her mama, and wants to see her."

I believe this evidence shows that A.R. and her mother have developed an ongoing relationship, and I do not think it is in A.R.'s best interests for this relationship to be severed permanently. It does not appear that the trial court took this relationship into account when it granted the petition for adoption.

In adoption proceedings, we review the record *de novo* but will not reverse the probate judge's decision unless it is clearly erroneous or against a preponderance of the evidence, after giving due regard to his opportunity to determine the credibility of the witnesses. Ark. R. Civ. P. 52; *McKee v. Bates*, 10 Ark. App. 51, 661 S.W.2d 415 (1983). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Gregg v. Ark. Dep't. of Human Servs.*, 58 Ark. App. 337, 952 S.W.2d 183 (1997).

In my opinion, after reviewing the evidence before us, I am convinced that the trial court erred when it granted this adoption. I would reverse and dismiss the adoption petition.

HART, JENNINGS, and NEAL, JJ., agree.