Christine CASSAT *v.* Allison HENNIS

CA 00-1314                                      45 S.W.3d 866

Court of Appeals of Arkansas
Division IV
Opinion delivered June 20, 2001

*Kelli S. Cashion*, for appellant.

*Treeca J. Dyer*, for appellee.

JOHN F. STROUD, JR., Chief Judge. Christine Cassat appeals
the probate judge's denial of her petition for adoption of
Taylor and Raegan Cassat on the basis that the consent of appellee,
Allison Hennis, the mother of the children, was required for the
adoption but was not given. On appeal, Christine argues that her
petition for adoption should have been granted because Allison had
failed to maintain significant contact with the children without
justifiable cause and because the adoption is in the children's best
interest. We affirm the probate court's denial of the petition for
adoption upon the finding that Allison's consent to the adoption
was required but was not given.

■ Probate proceedings are reviewed *de novo* on the record.
*Dale v. Franklin*, 22 Ark. App. 98, 733 S.W.2d 747 (1987). The
decision of a probate judge will not be disturbed unless it is clearly
erroneous, giving due regard to the opportunity and superior posi-
tion of the trial judge to determine the credibility of the witnesses.
*Id.*

Arkansas Code Annotated section 9-9-207(a)(2) (Repl. 1998)
provides:

> Consent to adoption is not required of a parent of a child in the
> custody of another, if the parent for a period of at least one (1) year
> has failed significantly without justifiable cause (i) to communicate

with the child or (ii) to provide for the care and support of the child as required by law or judicial decree.[1]

██ A party seeking to adopt a child without the consent of the natural parent must prove by clear and convincing evidence that the parent failed significantly and without justifiable cause to communicate with the child. *Vier v. Vier*, 62 Ark. App. 89, 968 S.W.2d 657 (1998). A finding that consent is unnecessary on account of a failure to support or communicate with the child is not reversed unless clearly erroneous. *In re Adoption of Lybrand*, 329 Ark. 163, 946 S.W.2d 946 (1997).

In the present case, Allison and Michael Cassat were divorced on October 28, 1997, and custody of the parties' two children, Taylor and Raegan, was vested with Michael. On November 5, 1999, Michael married Christine, and on November 16, 1999, eleven days after the marriage, Christine filed her petition for adoption. Allison opposed the petition for adoption, and a hearing on the matter was conducted on May 25, 2000.

At the hearing, Allison testified that she entered the Army on November 6, 1997, nine days after the divorce, with Michael's blessing and promise that he would help her see the children. She chose to be stationed as close to Little Rock as possible, even giving up an opportunity to go to Germany because of her children. She admitted that since the end of October 1997, she had only seen the children twice, once around Christmas 1997 and again in July of 1998. She testified that from July 1998 until Christmas 1999 she was unable to leave the base. She said that she had attempted to schedule visitation with the children during her "block leave," but it was never a convenient time for Michael. Furthermore, Michael told her that he would not allow her to leave Arkansas with the children.

Allison testified that she spoke with the children quite frequently during basic training until Michael changed his phone number to an unlisted number. He refused to give her the number, giving her instead his pager number, which he also subsequently changed. After she had no way to make direct telephone contact, Allison resorted to sending telephone cards so the children could call her. Additionally, she testified that she sent letters once or twice

---

[1] Support is not disputed as an allotment of $397 per month is deducted from Allison's military pay as an enlisted person and sent to her ex-husband.

a week, even sending disposable cameras and self-addressed stamped envelopes in which to return the cameras to her.

Michael admitted that he had changed his telephone number; he said it was due to Allison's abusive phone calls. He said he changed his pager number because Allison's calls were "unreasonable" and were interfering with his work. He admitted that Allison had sent Christmas presents for the children in December 1999; however, he and Christine did not tell the children that the presents were from Allison but rather told them they were from Santa Claus. He said that he and Allison had discussed her visiting, but he told her that she was not allowed to come to Raegan's birthday party, even though that was a time that her schedule permitted her to exercise visitation. When he and Christine went to Texas to visit relatives, Michael refused to stop and let Allison see the children because he did not deem it "appropriate." He also refused to allow Allison to take the children with her in December 1997 to visit her family because he did not think her family provided an appropriate environment.

On appeal, Christine argues that this case is analogous to *Shorter v. Reeves*, 72 Ark. App. 71, 32 S.W.3d 758 (2000). In that case, the probate judge found that biweekly or monthly telephone communication for one year did not constitute significant communication, held that the mother's consent for adoption was not required, and granted the paternal grandparents' petition for adoption. With regard to the finding that the natural parent's consent was not necessary for the adoption, this court held that, based upon the probate court's factual determinations, it could not be said that this determination was clearly against the preponderance of the evidence.

■ While some of the communication in the case at bar is similar to the facts of *Shorter*, the present case is clearly distinguishable. First, in the present case, the probate judge made the finding of fact that although personal contact was preferable, the contacts Allison had with the children were significant enough to require her consent for adoption, unlike the finding made in *Shorter* that the communication was not significant. Moreover, Allison also testified that in addition to the phone calls, she also mailed letters to the children weekly and occasionally sent packages. Our standard of review in probate cases does not mandate reversal unless the trial judge's findings of fact were clearly erroneous. We cannot say that the findings of fact in the present case were clearly erroneous.

■ Furthermore, there was evidence that when Allison made contact or attempted to see the children, her efforts were thwarted by her ex-husband. In *Shorter, supra*, this court defined "failure to communicate without justifiable cause" as one that is "voluntary, willful, arbitrary, and without adequate excuse." 72 Ark. App. at 75, 32 S.W.3d at 760. Unlike in *Shorter*, much of Allison's failure to communicate with her children was a direct result of Michael's actions. When she had leave time and asked to visit the children, Michael refused to let her see them. When Michael and Christine were taking the children to visit relatives in Texas and were traveling in close proximity to where Allison was stationed, Michael refused to stop and let the children see Allison because he deemed it "inappropriate." The most egregious conduct was when Michael changed his telephone number to an unlisted number and refused to give Allison the number and then changed his pager number as well. Allison resorted to sending phone cards so the children could call her, as she had no ability to contact them as a direct result of Michael's actions.

■ Christine also cites *Vier, supra*, for the proposition that a trial court may consider as a factor the parent's failure to seek enforcement of his or her visitation rights during the one-year period in determining whether he or she intended to maintain his or her parental role. Although Allison had not made an attempt to have her visitation enforced through the courts, she testified that she had been financially unable to do so and that she had also been through a high-risk pregnancy and was unable to travel. The probate judge, in her determination of credibility of the witnesses, was entitled to believe this testimony.

■ Given the probate judge's findings of fact, we cannot hold that her denial of the petition for adoption on the basis that Allison's consent for adoption was required but not given was clearly erroneous.

Affirmed.

PITTMAN and JENNINGS, JJ., agree.