# ARKANSAS COURT OF APPEALS
DIVISION IV
No. CV–12–973

| | |
|---|---|
| | **Opinion Delivered** September 18, 2013 |
| CHRISTOPHER BRIAN BURGER | APPEAL FROM THE POLK COUNTY CIRCUIT COURT |
| APPELLANT | [NO. PR-2011-115] |
| V. | HONORABLE J.W. LOONEY, JUDGE |
| LANCE TERRILL WRIGHT | REVERSED AND REMANDED |
| APPELLEE | |

## RHONDA K. WOOD, Judge

This appeal follows the circuit court's ruling that it was not in the best interest of a minor child, J.W., to be adopted by his stepfather following the finding that J.W.'s natural father had forfeited his right to require consent to the adoption. The circuit court found that the adoption was not in J.W.'s best interest due to the probable loss of a relationship between J.W and his paternal grandparents. We reverse and remand.

J.W. was born in 2003 to appellee Lance Terrill Wright and Jill Wright (now Burger). When the Wrights divorced, Jill was given custody of J.W., and Lance was awarded visitation and ordered to pay child support. Lance stopped paying child support and visiting J.W. in 2009.

Jill married appellant Christopher Burger on April 25, 2009. Christopher took on the role of father for J.W., participating in his day-to-day activities and coaching J.W.'s baseball team. In 2011, Christopher filed a petition for adoption in the circuit court of Polk County. The petition pled that Christopher should be allowed to adopt J.W.

without Lance's consent pursuant to Arkansas Code Annotated section 9-9-207(2). The court held a hearing on the petition, and both parties and their families testified pertaining to Christopher's adoption of J.W. All of the paternal grandparents[1] testified that Lance had failed to fulfill his paternal duties and that Christopher was a good father to J.W. The paternal grandparents also testified that Jill had not restricted their visitation with J.W. but expressed concern that this might change if the court granted the adoption. Both Jill and Christopher testified that they would continue to allow J.W. to see his paternal grandparents.

The court took the case under advisement. While deliberating his decision, the judge wrote three letters to the parties that included statements that the court would only grant the adoption if the parties could work out an agreeable visitation plan that would allow the paternal grandparents overnight weekend, holiday, and birthday visitation. The judge acknowledged in one letter that "[t]his is not something the court may include in the decree but I would be inclined to act favorably on the adoption request should she [Jill], her husband [Christopher], and the grandparents enter into a signed stipulation to that effect." In a subsequent letter, the court again wrote, "I cannot order this be done, I will take it into consideration in the determination of "best interest" of the child." It was following the court's third letter that an order was entered denying the adoption.

---

[1] Lance's parents divorced and subsequently married their current spouses, so there are four paternal grandparents total.

The court denied the petition for adoption stating:

[T]he court finds that the adoption of the minor child by Petitioners would not be in the best interest of the child due to the probable loss of family relationship with Respondents family which has been a valuable part of the child's life and cannot be easily set aside and the Petitioner, Jill Rena Burger's reluctance to allow any visitation arrangement with the paternal grandparents of the child.

Adoption proceedings are reviewed de novo, and the trial court's decision will not be disturbed unless clearly erroneous. *Vier v. Vier*, 62 Ark. App. 89, 968 S.W.2d 657 (1998). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *Neal v. Hollingsworth*, 338 Ark. 251, 992 S.W.2d 771 (1999).

The evidence in the record, when viewed in its entirety, does not support the denial of the adoption nor the notion that Jill and Christopher would deny J.W.'s paternal grandparents visitation. Instead, testimony from all witnesses supported the opposite conclusion: J.W. would benefit from the adoption by strengthening the nucleus of his family while still being allowed to maintain relationships with his natural paternal grandparents. Evidence presented at the hearing included testimony that Jill allowed J.W. visitation with his paternal grandparents despite the fact that his natural father abandoned him and despite the fact that she had no obligation to allow the visitation. Additionally, testimony from both Jill and Christopher was that they would continue to allow visitation if the adoption was granted. We hold that the court's decision to deny the adoption due to the probable loss of the family relationship with Lance's parents is clearly erroneous.

The most troubling aspect of the judge's last letter to the parties was that he implied that he would have granted the adoption—and would consider granting it in the

future—if Jill would agree to the court's suggested visitation arrangement with the paternal grandparents. Arkansas law is clear on grandparent visitation orders as related to adoptions. The court granting an adoption has no authority to include a grant of visitation rights to members of a natural parent's family. *Poe v. Case*, 263 Ark. 488, 565 S.W.2d 612 (1978). "A decree attempting to grant visitation rights to a natural grandparent as an incident to an adoption or to enforce a grandparent's visitation rights granted before the adoption, without specific statutory authority, is surplusage, void and separable from the remainder of the decree." *Id.*

In the present case, the judge attempted to force the parties to contract to something he was without any legal authority to do himself. The judge said that he would be "inclined to act favorably on the adoption request" if the parties agreed to his visitation schedule that he could not order. The court wrote that J.W. was in a loving home environment, that Christopher had taken on the role of father to J.W., and that even Lance did not testify to the contrary. The circuit court used its position of power to attempt to coerce Jill and Christopher into a written grandparent-visitation arrangement, when the law clearly states it cannot do so.

As it is clear, based on a review of the evidence presented, that the court's decision denying the adoption was clearly erroneous, this case is reversed and remanded to the circuit court for the entry of a decree of adoption.

Reversed and remanded.

GRUBER and HIXSON, JJ., agree.
*The Henry Firm, P.A.*, by: *Matthew Henry*, for appellant.
*Jerry Ryan*, for appellee.